UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| OTIS PARHAM, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 1:06-CV-370 |
| | ) | |
| GENERAL MOTORS CORPORATION., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION AND ORDER

This matter is before the court on the motion for summary judgment filed by the defendant, General Motors Corporation ("GM"), on December 21, 2007. The plaintiff, Otis Parham, Jr. ("Parham"), who is proceeding *pro se*, has failed to file any response in opposition to the motion, nor has he filed a request for additional time in which to do so.[1] Therefore, the motion is ripe for resolution. For the reasons discussed in this Order, the motion for summary judgment is GRANTED.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby,*

---

[1] GM served Parham with a notice pursuant to *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), informing him of the filing of the motion for summary judgment and his right to respond. Docket at 30. The detailed notice provided Parham with information on how and when to respond to the motion and what he might include in any response (such as supporting affidavits). Nonetheless, no response (or any other type of pleading or communication) has been filed.

*Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  *See id.* at 255.  However, neither the "mere existence of some alleged factual dispute between the parties," *id.,* 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), will defeat a motion for summary judgment.  *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes.  *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994).  Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate.  *See Shields Enterprises, Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir. 1989).  But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated.  *See Celotex,* 477 U.S. at 322; *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003).  A failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case.  *Celotex,* 477 U.S. at 325.  A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which

2

are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment.  *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir. 1999); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993).

The summary judgment standard is applied rigorously in employment discrimination cases, because intent and credibility are such critical issues and direct evidence is rarely available.  *Seener v. Northcentral Technical Coll.,* 113 F.3d 750, 757 (7th Cir. 1997); *Wohl v. Spectrum Mfg., Inc.,* 94 F.3d 353, 354 (7th Cir. 1996).  To that end, the court carefully reviews affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination.  However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts.  *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir. 1997).

In addition to this summary judgment standard, the court must be mindful of the fact that Parham is proceeding *pro se*.  The standard employed by the courts when examining *pro se* pleadings was explained recently in *Fields v. Roswarski*, 2008 WL 150657 *1 (N.D. Ind., January 11, 2008):

> When reviewing *pro se* complaints, a court must employ standards less stringent than if the complaint had been drafted by counsel.  *Haines v. Kerner,* 404 U.S. 519 (1972).  A court must accept the well-pleaded factual allegations as true, and "construe such allegations in favor of the plaintiff."  *Roots Partnership v.. Lands' End, Inc.,* 965 F.2d 1411, 1416 (7th Cir. 1992).  Although ambiguities in the complaint should be interpreted in the plaintiff's favor, *Canedy v. Boardman,* 16 F.3d 183, 188 (7th Cir. 1994), a court need not strain to find inferences favorable to the plaintiff which are not apparent on the face of the complaint, *Coates v. Illinois State Bd. of Educ.,* 559 F.2d 445, 447 (7th Cir. 1977), or ignore factual allegations set forth in the complaint that undermine the plaintiff's claim.  *City*

3

> *Nat'l Bank of Florida v. Checkers, Simon & Rosner,* 32 F.3d 277, 281 (7th Cir. 1994).

Accordingly, Parham's claims, and GM's motion for summary judgment on those claims, must be considered in light of these standards.

## DISCUSSION

Parham initiated this lawsuit by filing a Complaint, *pro se*, on November 16, 2006. Docket at 1. On November 21, 2006, Parham filed additional documents, which were docketed collectively as a supplement to his Complaint. Docket at 3. According to his Complaint, Parham was an employee at GM's Fort Wayne, Indiana, plant at the time of the events giving rise to his claims. Complaint, p. 2. In his Complaint, he alleges that on January 19, 2006, a man named John Beaty (a coworker, according to GM, although that is not clear in the Complaint) put a knife to Parham's chest and stated "I will kill you if you don't do what I say." *Id*., pp. 2 and 3. Parham also claims that Beaty (or perhaps someone else) "wrote slur words" somewhere in the plant. *Id*. These offensive words (which, according to Parham, apparently denigrated "gay guys,") were written on two different dates–January 5, 2006, and January 23, 2006. *Id*. In his prayer for relief, Parham states as follows: "I don't want John Beaty following me around or working at same plant. He cause problem for my family and other employee. A very dangerous person. This matter need to be investigated." *Id.*, p. 3. Parham states that he is suing GM for race discrimination, age discrimination, discrimination under the Americans With Disabilities Act, and retaliation. *Id.* It is unclear from his Complaint how his allegations support or even relate to such discrimination claims.

In the supplemental materials Parham filed on November 21, 2006, he included copies of two Charges of Discrimination he filed with the Fort Wayne Metropolitan Human Relations Commission and the Equal Employment Opportunity Commission on May 8, 2006. Docket at 3, p. 4 and 5. In both charges, he states that he is an African American male over 60 years old. *Id*. In the first charge, he names GM as the respondent and in the second charge he names the United Auto Workers Union. *Id.* In the charge filed against GM, Parham claims that he was "subjected to race and age discrimination that I reported to [GM] on April 1, 2006. After reporting my concerns I was terminated." *Id.*., p. 4. Parham states that the reason he was given for his termination was that he "refused to take medication that [GM] thought I should take." *Id.* He then states that he was "out of work for approximately two months before I was brought back." *Id.* He claims that he "was terminated again on January 24, 2006, for failing to take medication that [GM] thought I should take." *Id.*[2] Finally, he claims that a "Labor Relations representative told me that I would be fired again when I return for allegedly making false allegations." *Id.* Parham concludes by contending that this set of facts constituted discrimination on the basis of race, age, and disability, and also amounted to retaliation in violation of Title VII of the Civil Rights Act. *Id.* In his charge of discrimination against the UAW, Parham alleges that union representatives somehow prevented him from filing grievances even though they allegedly permitted Caucasian union members to do so. *Id.*, p. 5. Parham claims that the Union discriminated against him on the basis of his race. *Id.* However, the Union was not named as a defendant in this lawsuit nor does Parham's Complaint state any allegations against the Union.

---

[2] It is not clear if the April 1, 2006, date is a typographical error and should actually read "April 1, 2005," since Parham claims that he was "terminated *again* on January 24, 2006." This apparent discrepancy, however, is not material.

5

In its motion for summary judgment, GM seeks judgment in its favor on all of Parham's claims.  Motion for Summary Judgment, Docket at 31.  In support of its motion, GM submitted a "Statement of Uncontroverted Material Facts" ("Statement of Facts," Docket at 32) and a "Brief in Support of Motion for Summary Judgment ("Defendant's Brief," Docket at 33).  As the court has already pointed out, Parham has not responded to the motion in any fashion.

GM argues that it is entitled to summary judgment on all of Parham's claims because his allegations are completely unsupported by any evidence and, according to GM, arise out of the fact that GM referred Parham to a company physician who in turn referred him to an "outside doctor."  Defendant's Brief, p. 2.  According to GM, these referrals were made as a result of "concerns fostered by plaintiff's conduct."  *Id.*  GM contends that Parham had made some "bizarre allegations" that the company ultimately concluded were "borne in delusion."  *Id.*, p. 1.  GM was concerned that Parham "was a threat to himself or others."  *Id*.  As a result, GM made the medical referrals in an effort to help Parham.  *Id.*, generally.  Interestingly, despite Parham's claims in his Complaint and charges of discrimination, GM states that Parham "remains actively employed at GM's Fort Wayne, Indiana facility and at no time has he been terminated."  *Id.*, p. 2.  GM argues in its motion that Parham fails to present any evidence to establish a *prima facie* case of race, disability, or age discrimination, or retaliation.  *Id.*, generally.  In addition, GM argues that even if it is assumed that Parham has stated a claim for any type of discrimination, GM had a legitimate, nondiscriminatory reason for any action it took against Parham and Parham presents no evidence to refute it.  *Id.*, p. 7.  All of GM's arguments are well taken and the defendant is entitled to summary judgment.

GM readily concedes that Parham had reported to GM representatives that another employee had allegedly threatened him with a knife. GM has submitted an affidavit from Ella Hogan, a labor relations representative at GM's Fort Wayne plant. Motion for Summary Judgment, Exhibit C, Affidavit of Ella Hogan. Hogan states Parham came to her in January 2006 and "reported to me that his friend and co-worker, John Beatty, who is also African-American, had threatened him with a knife." *Id*., ¶ 4. Hogan states that she investigated the matter, "includ[ing] interviewing Mr. Beatty about the alleged incident. Mr. Beatty denied making any threats to Mr. Parham, and it is my understanding that Mr. Beatty and Mr. Parham are friends." *Id.*, ¶ 6. Hogan also states that "[i]n the past, Mr. Parham has made bizarre and unfounded allegations regarding activity at the plant." *Id*., ¶ 7. As a result of her investigation and her concerns about Parham's allegations, Hogan "refer[red] Mr. Parham to the plant medical director, Dr. Carlos Espinosa, for evaluation to determine if Mr. Parham was a danger to himself or others in the plant." *Id*., ¶ 8.

GM also submitted an affidavit from Dr. Espinosa. *Id*., Exhibit D, Affidavit of Dr. Carlos Espinosa. Dr. Espinosa confirms that Hogan referred Parham to him for evaluation, that he conducted an evaluation, and that he determined that Parham was not taking "prescribed medication for mental health impairments." *Id*., ¶ 4.[3] After talking with Parham, Dr. Espinosa "concluded that he was suffering from paranoid ideation, learned that he was not taking his medication and advised him to see his personal physician to become medication compliant." *Id*.,

---

[3] Dr. Espinoza notes that his January 2006 meeting with Parham was not his first meeting with plaintiff. The doctor states that "I had met with Mr. Parham in the plant medical department in the past, and I was aware that he had previously undergone treatment and been prescribed medication for mental health impairments." Affidavit of Dr. Carlos Espinosa, ¶ 4.

¶ 5. Dr. Espinosa states that he concluded "it was not safe for him to continue working at the plant, and accordingly, Mr. Parham was placed on paid sick leave." *Id*., ¶ 6. Dr. Espinosa states that he had several follow-up visits with Parham and finally, "[o]n or around May 1, 2006, I determined that plaintiff had become medication compliant and, therefore, I authorized his return to active employment." *Id*., ¶¶ 7 and 8.

Based on this set of facts and the statements presented by Hogan and Espinosa in their affidavits, GM defends its handling of the situation with Parham and concludes as follows:

> The uncontroverted facts demonstrate that plaintiff's referral to the GM facility doctor and subsequent referral to an outside doctor were based on concerns fostered by plaintiff's conduct, and at no time was he considered unable to perform the essential functions of any job or otherwise regarded as disabled under the ADA. In fact, plaintiff remains actively employed at GM's Fort Wayne, Indiana, facility, and at no time has he been terminated. In addition, plaintiff has come forward with no evidence that GM's medical referral decisions had anything to do with his race or age. As a result, GM is entitled to summary judgment on all of plaintiff's claims in this matter.

Defendant's Brief, p. 2.

Concerning Parham's disability claim, GE states that "Plaintiff appears to argue that his referral to the plant medical director, followed by a request that he be evaluated by an outside mental health care provider, demonstrates that he was 'regarded as' disabled under the Americans With Disabilities Act . . . ." *Id*., p. 3. The court agrees with GM's interpretation of Parham's ADA claim, as it is the only logical interpretation given the facts Parham presents. However, GM also correctly points out that "[i]t is well settled . . . that asking an employee to see a doctor is insufficient to carry a perceived disability claim past the summary judgment stage. '[W]here inquiries into the psychiatric health of an employee are job related and reflect a concern with the safety of . . . employees, the employer . . . may require that the employee

8

undergo a physical examination designed to determine his ability to work.'" *Id*., (quoting *Krocka v. City of Chicago*, 203 F.3d 507, 515 (7th Cir. 2000)). GM then discusses additional cases wherein appellate courts have held that employers may require an employee to undergo a mental evaluation of his or her fitness for employment when the employee demonstrates troubling behavior. *Id*. (discussing *Stewart v. County of Brown*, 86 F.3d 107 (7th Cir. 1996) and *Cody v. Cigna Healthcare*, 139 F.3d 595, 599 (8th Cir. 1998) ("[e]mployers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims.")). Even more importantly, in this case, is the fact that Parham was apparently never terminated from his job as he alleges. Instead, the uncontroverted evidence shows that he was placed on *paid* medical leave and that he remains an "active employee" of GM to this date. GM concedes, then, that Parham was placed on medical leave for a period of time. But the company points out that once its plant medical officer, Dr. Espinosa, was able to determine that Parham was taking appropriate and necessary medication, he authorized Parham to return to work. Defendant's Brief, p. 5. GM contends that "[a]t no time did any member of management express a belief that [Parham] was in fact unable to remain in the workplace and perform the functions of his job . . . ." *Id*.

As to Parham's race and age discrimination claims, GM argues that both must fail since Parham did not suffer any "adverse employment action" that would entitle him to relief, nor has he presented any "evidence to demonstrate that similarly situated employees were treated any differently or that his race or age played any part in the decision at issue . . . ." *Id*. In order to establish a *prima facie* case of race or age discrimination, a plaintiff must show that: 1) he was a member of a protected class; 2) he was meeting his employer's legitimate expectations in the

9

performance of his job; 3) he suffered an adverse employment action; and 3) similarly situated employees not in the same protected class were treated more favorably. *Tubergen v. St. Vincent Hosp. and Health Care Center, Inc.*, 2008 WL 451299 (7th Cir., (Ind.), Feb. 21, 2008).  GM argues that Parham has failed to show that he suffered any adverse employment action, since the company's decision to refer him to a doctor and to place him on medical leave did not constitute an adverse action under the facts of this case.  Defendant's Brief, pp. 5-6.  Also, GM argues that Parham "has no evidence that GM 'treated similarly-situated employees outside [his] classification more favorably.'" *Id.*, p. 6 (quoting *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132 (7th Cir. 1994)).[4]  GM contends that Parham "has not identified a single non-African American or younger employee who engaged in similar behavior and was not referred to an outside health care provider."  *Id*.

Finally, GM states that "[e]ven if [Parham] could establish a *prima facie* case of discrimination, GM has set forth a legitimate, nondiscriminatory reason for plaintiff's referral by pointing out his out of the ordinary conduct in the workplace and the subsequent safety concerns, thereby shifting the burden back to plaintiff to show that GM's explanation 'is merely pretext for discrimination.'" *Id.*, p. 7 (quoting *Lenoir*, 13 F.3d at 1133).  As GM states, and as the court has already noted, Parham has not submitted any evidence to refute the affidavits submitted by the company, which state that "neither race nor age played any part in [GM's] decisions."  *Id*.

GM makes only a passing reference to Parham's retaliation claim.  GM writes that "[i]t is

---

[4] GM also points out that "[w]ith regard to any claim of race discrimination, it bears noting that both the employee plaintiff accused of threatening him and the labor relations representative who referred Parham to the plant medical department are both also African-American, belying any suggestion of racial animus."  Defendant's Brief, pp. 6-7.

not apparent from the plaintiff's complaint whether he is asserting a claim for retaliation. To the extent he [is] asserting such a claim, his pleading makes no mention to any protected action." Defendant's Brief, p. 5, n. 1. Actually, Parham's Complaint clearly *does* assert a claim for retaliation. Complaint, p. 2. However, like his claims for disability, race, and age discrimination, Parham presents no facts to support this claim. And, as GM states, he does not so much as allege that he engaged in any type of protected activity that could arguably form the basis for any retaliation. Parham does state in his Complaint that he "reported to management" the alleged "knife" incident with his coworker. *Id.* However, Parham does not so much as claim to have reported any type of disability, race, or age discrimination to GM.[5] Therefore, as GM argues in its footnote in its brief, Parham cannot establish that he engaged in any protected activity and was later punished for it in some way, which is required to establish a showing of unlawful retaliation. *Gates v. Caterpillar, Inc.*, 513 F.3d 680 (7th Cir. 2008).

      For all the reasons just discussed, even a very liberal reading of Parham's Complaint (and the materials he filed as supplements to it) fails to raise any genuine issue of material fact concerning any of his claims. The uncontroverted facts demonstrate that Parham was not the victim of illegal discrimination on the basis of a disability, his race, or his age. These same facts also establish that Parham was not the victim of any retaliatory treatment. Accordingly, GM is entitled to summary judgment in its favor on all of Parham's claims.

---

[5] While his Complaint presents no facts at all to support a retaliation claim, Parham stated in his Charge of Discrimination that he was "retaliated against for reporting unlawful employment acts . . . ." Plaintiff's Supplement to Complaint, Docket at 3, p. 4. However, even in that document he does not state any facts to support that allegation. Rather, it is simply a stand-alone, conclusory statement outside of Parham's Complaint. This is, as GM argues, clearly insufficient to stave off summary judgment on that claim.

## CONCLUSION

For the reasons discussed in this Order, the motion for summary judgment filed by the defendant, General Motors Corporation, is GRANTED.

Date: March 3, 2008.

          /s/   William C. Lee
              William C. Lee, Judge
              United States District Court
              Northern District of Indiana